Jeffrey D. Kaliel (SBN 238293)
**KALIELGOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, D.C.  20005
(202) 350-4783
jkaliel@kalielgold.com

Sophia G. Gold (SBN 307971)
**KALIELGOLD PLLC**
490 43rd Street, No. 122
Oakland, California 94609
sgold@kalielgold.com

Andrew Shamis (*pro hac vice* to be filed)
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
(305) 479-2299
ashamis@shamisgentile.com

Scott Edelsberg (SBN 330990)
**EDELSBERG LAW, P.A.**
1925 Century Park E, Suite 1700
Los Angeles, CA 90067
Phone: (786) 289-9471
Email: scott@edelsberglaw.com

*Counsel for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLIE O'BRIEN, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **[Demand for Jury Trial]** |
| CSC HOLDINGS, LLC, | |
| Defendant. | |

## <u>INTRODUCTION</u>

Plaintiff Kellie O'Brien ("Plaintiff"), individually and on behalf of a proposed Class of California consumers, by and through counsel, hereby files this Class Action Complaint ("Complaint") against Defendant CSC Holdings, LLC d/b/a Optimum ("Defendant" or "CSC"), and in support thereof, alleges as follows:

**NATURE OF THE ACTION**

1.      Plaintiff brings this proposed class action on behalf of herself and similarly situated consumers against Defendant, arising from Defendant's continuing practice of deceiving consumers as to the true prices associated with its broadband internet service.

2.      For years, Defendant has engaged in a bait-and-switch scheme of advertising a fictitiously low-price for its internet service and then automatically adding on a "Network Enhancement Fee" (alternatively, the "NEF"), which artificially inflates the true cost of Defendant's internet service.

3.      Defendant mischaracterizes its NEF as an "invest[ment] in [its] network and infrastructure to deliver the best technology and services possible."

4.      But, behind the guise of Defendant's benevolence is the reality that the NEF is implemented solely to extort more money from Defendant's customers.

5.      Indeed, the NEF is nothing more than an empty "junk fee" imposed on customers for profit and Defendant deceives its customers by advertising prices that fail to include the NEF.

6.      By obscuring the nature and existence of the NEF, and thereby deceiving customers as to the true cost of Defendant's internet service, Defendant gains an unfair upper hand on competitors that fairly disclose their true internet service costs. Such fees are further deceptive and/or unfair in that they interfere with consumers' ability to price-compare and manipulate consumers into paying fees that are either hidden entirely or not presented until after consumers have made their purchasing decisions.

7.      Plaintiff and Class members suffer continuing injury from Defendant's deceptive and fraudulent practices. Plaintiff brings this action individually and on behalf of the putative Class seeking public injunctive relief on behalf of all California consumers injured by Defendant's misconduct.

**JURISDICTION AND VENUE**

8.      This Court has original jurisdiction of this action pursuant to 28 U.S.C. §§ 1332(d)(2) and (6) because (1) the proposed Class is comprised of at least 100 members; (2) at least

one member of the proposed Class is a citizen of a state different from Defendant; and (3) the amount in controversy exceeds $5 million.

9.    The Court also has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties.

10.    The Court has personal jurisdiction over Defendant because Defendant conducts continuous and systematic business in this District and in the State of California through its offering and servicing of internet and other products and services to consumers in California, including by advertising and selling internet service to consumers (like Plaintiff) within this State. Defendant maintains minimum contacts with California and/or otherwise intentionally avails itself of the California market, including this District, which has caused both obligations and liability of Defendant to arise in this District.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant regularly conducts business in this District and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## PARTIES

12.    Plaintiff is a natural person residing in city of Scotia, County of Humbolt, state of California. She has maintained an account with Defendant for internet service at all relevant times alleged herein.

13.    Defendant is a limited liability company owned solely by Optimum Communications, Inc., a corporation incorporated and headquartered in New York.

## FACTUAL ALLEGATIONS

A.    **Defendant Deceives Customers by Advertising its Internet Service at a Fictitiously Low Price and then Artificially Inflating the True Cost of its Internet Service by Adding a Mandatory, Useless "Network Enhancement Fee"**

14.    Defendant describes itself as one of the largest providers of internet service in the United States.[1] Operating under the brand name "Optimum," Defendant advertises and delivers

---

[1]    https://investors.optimum.com/news-events/press-releases/detail/224/Defendant-usa-changes-corporate-name-and-nyse-ticker-symbol-to (last visited November 26, 2025).

1    internet service to approximately 4.4 million residential and business customers across 21 states,

2    including California.

3        15.    Defendant markets, advertises, and promotes its internet service to the public via

4    direct mail, television, radio, and its website, among other methods. Defendant also communicates

5    with the public and subscribers to its internet service on its website, via telephone calls with

6    customer service and sales representatives, and with its subscribers on their monthly bills.

7        16.    Pertinent to this action, Defendant offers an array of internet plans ranging in price

8    dependent on varying degrees of internet speeds.

9        17.    Defendant advertises sham low-prices for its internet service to California consumers

10    through various marketing channels, including, but not limited to, its website, online promotions,

11    and mailing fliers.

12        18.    On its website, Defendant prominently advertises a variety of internet service plans

13    for flat monthly rates:



14

15

16

17

18

19

20

21

22

23

24

25

26        19.    But, in addition to the prices represented in its advertisements, Defendant charges

27    consumers a monthly fee that it characterizes as a "Network Enhancement Fee."

28

CLASS ACTION COMPLAINT

20.    Defendant introduced the NEF as a $2.50 monthly fee to its California internet subscribers in February 2019. Since that time, the NEF has not been included in Defendant's advertised and quoted service plan prices and is not defined or explained in Defendant's customers' monthly internet bills. Defendant has increased the NEF such that it is now $6.00 per month for California subscribers.

21.    When a new subscriber signs up for Defendant's internet service on Defendant's website, Defendant surreptitiously adds the NEF to its advertised price for internet service by sneaking the NEF into the new customer's "shopping cart" at the end of the customer's transaction after all other information has been inputted by the customer and they are ready to make their purchase. Many consumers do not notice that an additional fee is being added to their order. Others believe that they have no choice but to pay this fee. Others notice the previously undisclosed fee but decide to go through with the purchase anyway as they have already invested substantial time and effort inputting their information into Defendant's online ordering system.

22.    For customers who had signed up for Defendant's internet service before Defendant introduced the NEF, Defendant began—without notice—to add the NEF as a line item to internet subscribers' monthly bills in February 2019. This practice effectively imposed a concealed rate increase on existing customers, each of whom had purchased Defendant's internet service based on Defendant's false representation that the service carried a flat, low monthly fee that did not include the NEF.

23.    Due to Defendant's deceptive pricing tactics, most of its customers become aware of the NEF for the very first time when they review their monthly billing statements, by which time these customers have already committed to their internet subscriptions. Making matters worse, Defendant intentionally buries and obscures the NEF on these statements, rendering it unlikely that customers will notice the charge. By design, Defendant's printed monthly billing statements further its scheme by preventing customers from realizing they are being overcharged.

24.    The NEF is lucrative for Defendant. From February 2019 until the present, Defendant has collected millions of dollars in NEF charges from California consumers without providing any identifiable benefit in return for payment of the NEF.

25.     Defendant cannot point to any specific, identifiable benefit that subscribers receive in exchange for paying the NEF. A person cannot receive Optimum internet service without paying the NEF, yet, when subscribers pay the NEF, they don't receive anything extra in return.

26.     As an investigation by the Connecticut Attorney General recently unearthed, Defendant's internal communications reveal that its introduction of the NEF was nothing more than a means of increasing Defendant's prices, while being able to advertise an artificially low price, without transparently informing consumers of the actual price of Defendant's internet service.

27.     Because it provides no value to consumers, Defendant's NEF is nothing more than a hidden "junk fee." Such fees have come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition*, Mar. 5, 2024, available at https://bidenwhitehouse.archives.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/.

28.     As the Federal Trade Commission said recently regarding its effort to combat junk fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Fed. Trade Comm'n, *FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees*, Oct. 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

29.     Covertly applied fees like Defendant's NEF are also unfair, deceptive, and misleading to consumers because they obstruct their ability to engage in true price comparisons and

1    prevent them from participating in a fair and competitive marketplace. To illustrate, in 2022,

2    Consumer Reports conducted a year-long study digging into the true cost of home internet services

3    offered by numerous internet service providers across the country and concluded that consumers are

4    paying exorbitant bills for broadband services, including through the assessment of "junk fees" like

5    Defendant's NEF.[2]

6          30.    The study identified that "Company-Imposed Fees, aka Junk Fees" largely

7    contributed to the widespread consumer confusion as to the true cost of internet services because

8    they "make it difficult for consumers to budget and compare prices with alternative service

9    options":[3]

10        ***Fees.*** ISPs charge a wide range of fees that, together, can add up to a significant
          portion of the overall cost of service and contribute to the confusion around internet
11        pricing. . . . The unavoidable fees are especially problematic because consumers may
          belief they are government-imposed when, in fact, many are company imposed and
12        distinguished from the core service price at the provider's discretion. More than a
          dozen ISPs were found to charge company-imposed fees—also known as junk
13        fees—under names such as "network enhancement fee," "internet infrastructure fee,"
          "deregulated administration fee," and "technology service fee." They can surprise
14        consumers when they appear on monthly bills, and can enable providers to raise
          prices without seeming to violate marketing or contractual price commitments.[4]
15

16         31.    The danger of junk fees like Defendant's NEF in the broadband market is palpable:

17   "Such fees do a disservice to consumers by muddying the true price of broadband, making it

18   difficult for consumers to compare prices, creating a pretext for providers to advertise low base rates

19   while actually charging higher prices, and enabling providers to raise prices while superficially

20   appearing to honor lower introductory or contractually promised base rates."[5]

21         32.    In fact, in recognition of the potential for deception, the Federal Trade Commission

22   has recently banned this practice. Specifically, the FTC has cautioned against "misleading door

23   openers," calling such price advertisements "deceptive":

24        [I]nternet service providers routinely do not include internet service fees, such as
          installation and activation fees, equipment fees, penalties for exceeding data caps,
25

---

26   [2] See Consumer Reports, *Broadband Pricing: What Consumer Reports Learned from 22,000*
27   *Internet Bills*, Nov. 17, 2022.
     [3] *Id.* at 3.
28   [4] *Id.* at 4.
     [5] *Id.* at 23.

and early termination fees, in advertised prices, *and that these fees should be considered as part of the true monthly cost of internet service that should be incorporated into advertised prices or prohibited when they are arbitrary or do not reflect added value.*[6]

33.     Additionally, the way Defendant charges the NEF—surreptitiously adding the fee to customers' shopping carts during a transaction while omitting the fee from its price advertisements for internet service—has been specifically outlawed in California. In July 2024, California expanded its Consumers Legal Remedies Act ("CLRA"), amending it to make "drip pricing" illegal. Drip pricing is advertising a price that is less than the actual price that a consumer will have to pay for a good or service. *See* Cal. Civ. Code § 1770(a)(29).

34.     Under the new California law, it is now illegal to advertise a low price for a product, only for that product to be subject to additional or mandatory fees later. In other words, "the price listed or advertised to the consumer must be the full price that the consumer is required to pay." *See* California Department of Justice, Office of the Attorney General, *SB 478 Frequently Asked Questions*, available at https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf (last accessed Nov. 26, 2025). As the California Department of Justice stated:

> Businesses are free to explain how they set their prices or to *subsequently* itemize the charges that make up the total price that they charge customers. However, the price they advertise or display must be the total price that customers will have to pay for the good or service. Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive.

*Id*. at 4 (emphasis added).

35.     Additionally, in its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," the FTC makes clear that, when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy—for example, before the

---

[6] Trade Regulation Rule on Unfair or Deceptive Fees, 88 Fed. Reg. 77420, 77432 (proposed Nov. 9, 2023) (to be codified at 16 C.F.R. § 464) (emphasis added).

consumer "add[s] to shopping cart." *See* Fed. Trade Comm'n, *.com Disclosures: How to Make Effective Disclosures in Digital Advertising* at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

36.     Thus, Defendant's failure to adequately disclose the true nature of the NEF to its customers unfairly obscures the true cost of its internet service in violation of state law and federal guidance.

**B.      Defendant's Representations About the NEF are Deceptive and Unfair**

37.     In addition to the deceptive practices described above, Defendant deceives customers in other ways when describing the NEF to its customers, leaving customers reasonably interpreting Defendant's messages to think they will receive an identifiable benefit for paying the NEF.

38.     In a January 2019 bill to its internet service customers, Defendant introduced the NEF as follows:

> You're incredibly important to us and the reason we work hard to deliver a first-class customer experience. We continue to invest in our network and new technologies, such as delivering faster broadband speeds and Defendant One, our all-in-one entertainment experience. Effective with your February bill, adjustments will be made to certain rates listed below, including the introduction of a Network Enhancement Fee of $2.50 per month, that will enable us to continue to invest in our network and infrastructure to deliver the best technology and services possible.

39.     Thus, Defendant described the NEF as a fee that would confer a benefit (for example, faster internet speeds).

40.     An internet service subscriber receiving this notice on their bill would reasonably interpret it to mean what it says, that the fee would "enhance" their service, and that the NEF, as opposed to any of the other amounts charged by Defendant, would "enable" Defendant to continue to invest in its network and deliver "faster broadband" and the best technology and services possible to that subscriber.

41.     Defendant's notice to subscribers explaining the NEF is material to consumers as it purports to justify a charge on the bill.

42.     Defendant's explanation of why the NEF was being imposed is likely to deceive consumers because subscribers have not received "enhanced" service or "faster broadband" in exchange for paying the NEF.

43.     The charge was mandatory—it was charged to all existing subscribers, regardless of their level of service—and subscribers did not receive anything over and above the service they had received previously in exchange for paying the fee.

44.     The NEF is also deceptive, unfair, and misleading in that its name (Network Enhancement Fee) made it sound like a mandatory government-imposed fee when it was not.[7] Under the common usage of the word "fee," a consumer interpreting the name of the NEF reasonably under the circumstances would believe the NEF to be a government fee, or a charge in exchange for a service.

45.     As described above, however, the NEF was not passed through to a regulatory body, nor is it a service offered in exchange for payment. It was charged by Defendant, at Defendant's discretion, and collected by Defendant simply to increase its profits. Subscribers did not receive anything extra in exchange for the NEF.

46.     And Defendant's misrepresentation of the NEF has not been limited to billing statements. Following a years-long investigation into Defendant's billing practices, the Connecticut Attorney General recently filed a consumer-protection lawsuit against Defendant, alleging many of the same deceptive practices detailed in this Complaint. *See* Exhibit _ (Substitute Complaint filed in *Connecticut v. CSC Holdings, LLC*, No. X 06-UWY-CV24-6078705-S (Conn. Super. Ct. Oct. 30, 2025)). Therein, the State of Connecticut revealed Defendant's deceptive and misleading Spanish-language marketing toward Spanish-speaking households in Connecticut between 2018 and 2023. In these Spanish-language advertisements, Defendant promised fast internet service and omitted any

---

[7] Trade Regulation Rule on Unfair or Deceptive Fees, 88 Fed. Reg. 77420, 77427 (Nov. 9, 2023) ("The Consumer Federation of America cited a review of internet bills by Consumer Reports that showed providers using terminology such as 'network enhancement fee,' 'internet infrastructure fee,' 'deregulated administration fee,' and 'technology service fee,' that made fees look like government-imposed, mandatory fees.").

1  reference to the mandatory NEF except in fine print in a nondescript portion of the advertisement—

2  and in English.

3  **PLAINTIFF'S EXPERIENCE**

4    47.    Plaintiff has been subscribed to Defendant's Optimum internet service since

5  approximately 2022.

6    48.    After browsing Defendant's internet service offerings, Plaintiff subscribed to a one-

7  gigabyte Optimum internet service plan, advertised as costing $139.99 per month.

8    49.    At no point was Plaintiff aware that Defendant would bill her any additional monthly

9  internet service charges above the advertised rate. At no point did Plaintiff view any mention of the

10  existence of the NEF or any additional service charges.

11    50.    Plaintiff did not realize she was being charged a NEF of $6.00 per month in

12  association with her Optimum internet service until reviewing her monthly internet bill.

13    51.    Plaintiff's billing statements did not inform or adequately disclose to her that

14  Defendant was adding an extra fee for internet service which it disguised in the form of the

15  "Network Enhancement Fee" each month.

16    52.    Plaintiff did not know, nor could she have known, that Defendant's NEF was devised

17  by Defendant as part of a scheme to covertly charge a higher price for internet service than

18  advertised and to raise customers' monthly rates.

19    53.    When Plaintiff first signed up for Defendant's internet service, she relied on

20  Defendant's prominent representations regarding the fixed monthly price of its internet service.

21  Plaintiff did not expect that she would be charged an extra fee (the NEF) for internet service. Had

22  Plaintiff known about the fee, she would not have been willing to pay as much for Defendant's

23  internet service plan and would have acted differently.

24    54.    Plaintiff has a legal right to rely now, and in the future, on the truthfulness and

25  accuracy of Defendant's representations and advertisements regarding its internet service plan

26  prices. Plaintiff continues to subscribe to Defendant's internet service as she has limited options for

27  internet where she resides.

28

CLASS ACTION COMPLAINT

55.     Plaintiff wants to be confident that the advertised and quoted price for Defendant's internet service is the true and full price that she will pay. Plaintiff also wants to be confident that Defendant is not going to increase its service price during the time she remains a customer of Defendant. And, if Defendant introduces any new or invented discretionary monthly internet service charge (like it did with the NEF), Plaintiff wants to be confident that Defendant will include the amount of that service charge in the advertised and quoted service price.

56.     Plaintiff also would be willing to sign up for a different service plan from Defendant in the future, but she would be harmed if she were left to guess as to whether Defendant's representations are accurate and whether there are omissions of material facts regarding the services being advertised and represented to her.

## CLASS ALLEGATIONS

57.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action individually on behalf of all current and former Optimum internet subscribers in California who were charged a "Network Enhancement Fee" on their bill for internet services within the applicable statute of limitations (the "Class").

58.     Specifically excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

59.     ***Numerosity***. Class members are so numerous that joinder of all members would be impracticable. Plaintiff does not know the exact number of Class members prior to discovery. However, based on information and belief, there are thousands of putative Class members. The exact number and identities of Class members are contained in Defendant's records and can be easily ascertained from those records.

60.     ***Commonality and Predominance***. Common legal or factual questions affect the members of the Class. These questions predominate over questions that might affect individual Class members. These common questions include, but are not limited to:

a.    Whether California law applies to the claims of Plaintiff and the Class;

b.  Whether Defendant employs a uniform policy of charging the Network Enhancement Fee to its California customers;

c.  Whether the Network Enhancement Fee is a fee devised purely for Defendant's profit and provides no benefit to Defendant's customers;

d.  Whether the amount of the Network Enhancement Fee is arbitrary;

e.  Why Defendant does not include the amount of the Network Enhancement Fee in the advertised and quoted service plan price;

f.  Whether Defendant's policy and practice of advertising and quoting the prices of its internet service plans without including the amount of the Network Enhancement Fee is false, deceptive, or misleading;

g.  Whether Defendant's policy and practice of advertising and representing that the prices of its internet service plans are fixed and will not increase during a specified promotional period, when in fact Defendant reserves the right to increase service prices during that period by increasing the Network Enhancement Fee, is false, deceptive, or misleading;

h.  Whether Defendant deliberately hides and obscures the nature of the Network Enhancement Fee in its billing statements;

i.  Whether Defendant adequately or accurately disclosed the existence of the Network Enhancement Fee, its nature, or its amount, to the Class;

j.  Whether Defendant's misrepresentations and misconduct alleged herein violate California Civil Code § 1750 *et seq.*, California Business & Professions Code § 17500 *et seq.*, and California Business & Professions Code § 17200 *et seq.*; and

k.  Whether Plaintiff and the Class are entitled to an order prohibiting Defendant from continuing to charge them the Network Enhancement Fee.

61.  ***Typicality.*** Plaintiff's claims are typical of Class members' claims. Plaintiff and Class members all sustained injury as a direct result of Defendant's standard practices and schemes, bring the same claims, and face the same potential defenses.

62.    ***Adequacy.*** Plaintiff will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests. Plaintiff has retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

63.    ***Superiority.*** Further, a class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of their claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Defendant's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and permit comprehensive supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial.

64.    Defendant has acted and refused to act on grounds that apply generally to the Class.

65.    The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications.

66.    A class action is the only practical, available method for the fair and efficient adjudication of the controversy since, inter alia, the harm suffered by each Class member is too small to make individual actions economically feasible. Litigating this action as a class action will present no unusual manageability issues.

67.    Defendant is primarily engaged in the business of selling services. Each cause of action brought by Plaintiff against Defendant in this Complaint arises from and is limited to statements or conduct by Defendant that consist of representations of fact about Defendant's business operations or services that is or was made for the purpose of obtaining approval for, promoting, or securing sales of or commercial transactions in, Defendant's services or the statement is or was made in the course of delivering Defendant's services. Each cause of action brought by Plaintiff against Defendant in this Complaint arises from and is limited to statements or conduct by

1  Defendant for which the intended audience is an actual or potential buyer or customer, or a person

2  likely to repeat the statements to, or otherwise influence, an actual or potential buyer or customer.

3  **FIRST CLAIM FOR RELIEF**
   **Violation of the Consumers Legal Remedies Act ("CLRA")**

4  **California Civil Code § 1750 *et seq.***

5  68.    Plaintiff realleges and incorporates by reference all paragraphs previously alleged

6  herein.

7  69.    Plaintiff brings this claim in her individual capacity, in her capacity as a private

8  attorney general seeking the imposition of public injunctive relief to protect the general public, and

9  as a representative of the Class.

10  70.    Defendant is a "person," as defined by Cal. Civ. Code § 1761(c).

11  71.    Plaintiff and Class members are each "consumers," as defined by Cal. Civ. Code

12  § 1761(d).

13  72.    Plaintiff's internet service plans are "services" pursuant to Cal. Civ. Code § 1761(b).

14  73.    The purchase of one of Defendant's internet service plans is a "transaction," as

15  defined by Cal. Civ. Code § 1761(e).

16  74.    Plaintiff and Class members purchased Defendant's internet service plans for

17  personal, family, and/or household purposes, as meant by Cal. Civ. Code § 1761(d).

18  75.    The unlawful methods, acts, or practices alleged herein to have been undertaken by

19  Defendant were all committed intentionally and knowingly. The unlawful methods, acts, or

20  practices alleged herein to have been undertaken by Defendant did not result from a bona fide error

21  notwithstanding the use of reasonable procedures adopted to avoid such error.

22  76.    Defendant intentionally deceived Plaintiff and the Class, and continues to deceive the

23  general public, by: (1) misrepresenting the prices of Defendant's internet service plans by

24  advertising or quoting an internet service plan price that does not include applicable monthly

25  service charges such as the Network Enhancement Fee; (2) inventing a bogus Network

26  Enhancement Fee out of whole cloth and not including that fee amount in the advertised and quoted

27  price of the internet service plan, when in fact the fee is an arbitrary and disguised double-charge for

28  the internet service promised in the plan; (3) misrepresenting that the prices of its internet service

plans are fixed and will not increase during a specified promotional period, when in fact, Defendant reserves the right to increase service prices during that period by increasing discretionary monthly service charges such as the Network Enhancement Fee; and (4) misrepresenting the nature of the Network Enhancement Fee by stating that it materially and beneficially impacts the internet services its customers pay for.

77.    Defendant violated the CLRA by, *inter alia*: (1) representing that its internet service plans had characteristics they did not have; (2) advertising its internet service plans with an intent not to sell them as advertised; (3) making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions; and (4) misrepresenting that its internet service plans were supplied in accordance with previous representations when they were not.

78.    With respect to Defendant's omissions, Defendant at all relevant times had a duty to disclose the information in question because, *inter alia*: (1) Defendant had exclusive knowledge of material information that was not known to Plaintiff and Class members; (2) Defendant concealed material information from Plaintiff and Class members; and (3) Defendant made partial representations, including regarding the supposed monthly rate of its internet service plans, which were false and misleading absent the omitted information.

79.    Defendant's misrepresentations deceive and tend to deceive the general public.

80.    Defendant's misrepresentations are material in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

81.    Plaintiff and Class members reasonably relied on Defendant's material misrepresentations, and would not have purchased, or would have paid less money for, Defendant's internet services had they known the truth.

82.    As a direct and proximate result of Defendant's violations of the CLRA, Plaintiff and Class members have been harmed and lost money or property in the amount of the Network Enhancement Fees they have been charged and paid. Moreover, Defendant continues to charge Plaintiff and Class members the Network Enhancement Fee and may continue to increase its service prices via fee increases.

83. Defendant's conduct has caused substantial injury to Plaintiff, Class members, and the general public.

84. Plaintiff lacks an adequate remedy at law to prevent Defendant's continued misrepresentations. Defendant's conduct is ongoing and is likely to continue and recur absent a permanent injunction.

85. At or around the same time as of the filing of this Complaint, pursuant to Cal. Civ. Code § 1782(a), Plaintiff has or will contemporaneously notify Defendant in writing by certified mail of the particular violations of § 1770 of the CLRA and demand that, *inter alia*, it correct same. Plaintiff will amend this Complaint to seek damages if Defendant does not comply with Cal. Civ. Code § 1782(b).

86. Plaintiff seeks public injunctive relief under the CLRA to protect the general public from Defendant's false advertising and misrepresentations.

**SECOND CLAIM FOR RELIEF**
**Violation of the False Advertising Law ("FAL")**
**California Business and Professions Code § 17500 *et seq.***

87. Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

88. Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief to protect the general public, and as a representative of the Class.

89. By its conduct alleged herein, Defendant has committed acts of untrue and misleading advertising, as defined by and in violation of California Business & Professions Code § 17500, *et seq.*, also known as California's False Advertising Law ("FAL"). These acts include, but are not limited to: (1) misrepresenting the prices of Defendant's internet service plans by advertising or quoting an internet service plan price that does not include applicable monthly service charges such as the Network Enhancement Fee; (2) misrepresenting that the prices of its internet service plans are fixed and will not increase during a specified promotional period, when in fact, Defendant reserves the right to increase service prices during that period by increasing discretionary monthly service charges such as the Network Enhancement Fee; and (3) misrepresenting the nature of the

Network Enhancement Fee by stating that it materially and beneficially impacts the internet services its customers pay for.

90. Defendant committed such violations of the FAL with actual knowledge that its advertising was misleading, or Defendant, in the exercise of reasonable care, should have known that its advertising was misleading.

91. Defendant's misrepresentations deceive and tend to deceive the general public.

92. Defendant intentionally deceived Plaintiff and Class members and continues to deceive the public.

93. Defendant's misrepresentations are material in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

94. Plaintiff and Class members reasonably relied on Defendant's material misrepresentations, and would not have purchased, or would have paid less money for, Defendant's internet services had they known the truth.

95. As a direct and proximate result of Defendant's violations of the FAL, Plaintiff and Class members have been harmed and lost money or property in the amount of the Network Enhancement Fees they have been charged and paid. Moreover, Defendant continues to charge Plaintiff and Class members the Network Enhancement Fee and may continue to increase its service prices via fee increases.

96. Defendant's conduct has caused substantial injury to Plaintiff, Class members, and the general public.

97. Plaintiff lacks an adequate remedy at law to prevent Defendant's continued false advertising practices. Defendant's conduct is ongoing and is likely to continue and recur absent a permanent injunction. Accordingly, Plaintiff seeks an order enjoining Defendant from committing such practices.

98. Further, Plaintiff requests an order awarding Plaintiff and Class members restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

99.     Plaintiff, on behalf of herself and as a private attorney general, seeks public injunctive relief under the FAL to protect the general public from Defendant's false advertising.

**THIRD CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL")**
**California Business and Professions Code § 17200 *et seq.***

100.     Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

101.     Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief to protect the general public, and as a representative of the Class.

102.     California Business & Professions Code § 17200, *et seq.*, also known as California's Unfair Competition Law ("UCL"), prohibits any unfair, unlawful, or fraudulent business practice.

103.     Defendant has violated the UCL by engaging in the following unlawful practices: (1) making material misrepresentations in violation of the CLRA and the FAL and (2) engaging in deceit in violation of Cal. Civ. Code §§ 1709-10.

104.     Defendant has violated the UCL by engaging in the following unfair and fraudulent practices: (1) misrepresenting the prices of Defendant's internet service plans by advertising or quoting an internet service plan price that does not include applicable monthly service charges such as the Network Enhancement Fee; (2) inventing a bogus "Network Enhancement Fee" out of whole cloth and not including that fee amount in the advertised and quoted price of the internet service plan, when in fact the fee is an arbitrary and disguised double-charge for the internet service promised in the plan; (3) misrepresenting that the prices of its internet service plans are fixed and will not increase during a specified promotional period, when in fact, Defendant reserves the right to increase service prices during that period by increasing discretionary monthly service charges such as the Network Enhancement Fee; and (4) misrepresenting the nature of the Network Enhancement Fee by stating that it materially and beneficially impacts the internet services its customers pay for.

105.     Defendant's practices are likely to mislead reasonable consumers.

106.     Defendant's practices deceive and tend to deceive the general public.

107.    Defendant's misrepresentations are material in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

108.    Defendant intentionally deceives Plaintiff and Class members and continues to deceive the public.

109.    Plaintiff and Class members reasonably relied on Defendant's material misrepresentations, and would not have purchased, or would have paid less money for, Defendant's internet services had they known the truth.

110.    Defendant's conduct alleged herein is immoral, unethical, oppressive, unscrupulous, unconscionable, and substantially injurious to Plaintiff, Class members, and the general public. Perpetrating a years-long scheme of misleading and overcharging customers is immoral, unethical, and unscrupulous. Moreover, Defendant's conduct is oppressive and substantially injurious to consumers. There is no utility to Defendant's conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm to consumers caused by Defendant's conduct alleged herein.

111.    As a result of its unfair, fraudulent, and unlawful conduct, Defendant has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Business & Professions Code §§ 17203 and 17204.

112.    Plaintiff lacks an adequate remedy at law. Defendant's conduct is ongoing and is likely to continue and recur absent a permanent injunction.

113.    Plaintiff, on behalf of herself and as a private attorney general, seeks public injunctive relief under the UCL to protect the general public from Defendant's false advertisements and misrepresentations.

## **PRAYER FOR RELIEF**

To prevent injury to the general public, Plaintiff, individually and as a private attorney general, requests that the Court enter a public injunction against Defendant under the CLRA, FAL, and UCL as follows:

CLASS ACTION COMPLAINT

1.    Permanently enjoin Defendant from advertising or quoting an internet service plan price if that price does not include any applicable monthly service charges such as the Network Enhancement Fee;

2.    Permanently enjoin Defendant from advertising or representing that the prices of its internet service plans are fixed and will not increase during a specified promotional period, when in fact, Defendant reserves the right to increase the service price during that period by increasing discretionary monthly service charges such as the Network Enhancement Fee; and

3.    Retain jurisdiction to monitor Defendant's compliance with the foregoing injunctive relief.

Plaintiff further requests that the Court:

1.    Certify this matter to proceed as a class action, appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

2.    Award all damages available under the law, including compensatory, statutory, and punitive, as well as pre- and post-judgment interest; and

3.    Award Plaintiff and the Class their reasonable attorneys' fees and costs of suit, along with pre- and post-judgment interest; and

4.    Award such other and further relief as the Court deems just, proper, and equitable.

Dated: December 5, 2025                    Respectfully submitted,

                                          **KALIELGOLD PLLC**

                                    By: */s/ Jeffrey D. Kaliel*
                                          Jeffrey D. Kaliel
                                          Sophia G. Gold

                                          *Counsel for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT